UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIDY DIAWARA, | Case No.: |
| *Plaintiff,* | |
| | **COMPLAINT** |
| *v.* | |
| LASERSHIP, INC. | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

Sidy Diawara, by and through his attorneys Kakalec & Schlanger, LLP, as and for his Complaint, alleges as follows:

<u>Preliminary Statement</u>

1.      Plaintiff Sidy Diawara ("Plaintiff" or "Mr. Diawara"), worked as a driver for LaserShip, Inc. ("LaserShip," "Defendant," or the "company"), a delivery and courier company, for more than three years.   Although the company maintained the right to control Mr. Diawara's work – and in fact exercised that control – LaserShip treated Mr. Diawara as an independent contractor rather than as an employee during his entire tenure with the company.  LaserShip never paid Mr. Diawara overtime, even when he worked as many as 100 hours in a single work week.  Similarly, LaserShip never reimbursed Mr. Diawara for his significant out-of-pocket work expenses.

2.      Plaintiff files this action based upon Defendant's violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* and New York Labor Law.

Jurisdiction and Venue

3.      The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal

        question jurisdiction), 28 U.S.C. § 1343, and 29 U.S.C. § 201 et seq.

4.      The Court has jurisdiction over Plaintiff's pendant state law claims under 28

        U.S.C. § 1367 (supplemental jurisdiction).   Plaintiff's state law claims are parts

        of the same case or controversy as Plaintiff's federal claim.

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391.   A substantial part of

        the acts and/or omissions giving rise to the claims alleged in this Complaint

        occurred within this district.

6.      Defendants reside and/or do business in this district.

Parties

7.      Sidy Diawara is a resident of the State of New Jersey who worked as a driver for

        LaserShip in New York State between 2014 and 2017.

8.      LaserShip is a Virginia corporation which has its principal place of business in

        Vienna, Virginia.

9.      LaserShip is engaged in "commerce" as defined by 29 U.S.C. § 203, and it has a

        gross volume business of not less than $500,000 per year.

10.     At all times relevant to this action, Defendant was an "employer" of Plaintiff

        within the meaning of the FLSA and New York Labor Law.

11.     At all times relevant to this action, Plaintiff was an "employee" of Defendant

        within the meaning of the FLSA and New York Labor Law.

12.     At all times relevant to this action, Defendant "employed" Plaintiff within the

        meaning of the FLSA and New York Labor Law.

Factual Allegations

*Misclassification*

13. LaserShip classified Mr. Diawara as an independent contractor and each year furnished him with an IRS 1099 form rather than a W-2 form as is used for employees.

14. However, Plaintiff in fact was an employee of Defendant. Defendant had the power to control, and did in fact control, the terms and conditions of Plaintiff's employment.

15. Defendant hired Mr. Diawara in 2014 without an end date.

16. At the time LaserShip hired Mr. Diawara, LaserShip presented Mr. Diawara with a document purporting to be an "Independent Contractor Agreement." LaserShip required Mr. Diawara to sign this agreement in order to work for the company. Mr. Diawara was not able to negotiate or vary any of the terms in the "Independent Contractor Agreement."

17. From the beginning of Mr. Diawara's employment by LaserShip, Defendant dictated the terms and conditions of Mr. Diawara's work. For example, Defendant dictated the number of delivery routes Mr. Diawara for which Mr. Diawara would be responsible.

18. When he first began working for the company, Mr. Diawara drove in eight Hudson Valley towns. Beginning in November 2014, Mr. Diawara drove in four Hudson Valley towns: Beacon, New Windsor, Mahopac, and Carmel. Defendant determined and assigned Mr. Diawara's routes, and Mr. Diawara was not free to change them without the company's approval. Further, Mr. Diawara

could not elect to make deliveries for LaserShip in different locales, additional locales or fewer locales.

19.   For the last several months of his work for LaserShip, Mr. Diawara regularly asked LaserShip to cut down on the number of towns he covered as his extremely long work hours had become burdensome.  However, Mr. Diawara's supervisor, William, told him that if he could not cover all of the towns in his route, he would have no route, i.e., he would not be able to continue working for LaserShip. Ultimately, Mr. Diawara was forced to leave the company because of the company's refusal to allow him to work less punishing hours (for which, as described below, he was not paid overtime).

20.   Defendant set Plaintiff's daily schedule, telling him where to go each day and giving him a print-out showing the order of the drop off and pick up stops that LaserShip assigned.

21.   LaserShip required Plaintiff to be exclusively available to work for it weekly from Sunday through Friday, all day, with each day beginning at 6:00 a.m.

22.   Plaintiff did not, and could not, negotiate the price of deliveries with customers.

23.   LaserShip also did not permit Mr. Diawara to speak with customers directly, except for incidentally in connection with his deliveries.

24.   Further, LaserShip customers never paid Mr. Diawara directly.

25.   Plaintiff similarly could not negotiate the time or date of delivery with LaserShip's customers.  The time of delivery was negotiated directly between LaserShip and its customers.

26.   Each work morning, Mr. Diawara was required to report to the LaserShip warehouse in Belleville, New Jersey to begin his work for the company.

27.   At the warehouse, a LaserShip employee would give Mr. Diawara a list of the delivery stops he had to make that day, along with a print-out map which indicated the order that the deliveries should be made.

28.   Before LaserShip permitted Mr. Diawara to fill his truck with the packages to be delivered each day, he had to show a LaserShip security officer that he had received this print-out of deliveries he was required to make.

29.   Mr. Diawara was unable to take on jobs outside of his work for LaserShip because his work for Defendant required his full-time attention.

30.   Plaintiff's work was overseen by his supervisor, William.   Plaintiff would customarily see and speak with William in the mornings at the LaserShip warehouse.  At times, William would also call Mr. Diawara during the day as well to check on his work.

31.   By way of example, when Mr. Diawara wanted to stop work because of a snow storm, William required Mr. Diawara to text a picture of the snow so that William could determine whether he would permit Mr. Diawara to stop work.

32.   If Plaintiff was going to be absent from work, he was required to notify William, who would assign someone else to cover the shift.

33.   LaserShip required Mr. Diawara to wear a uniform that while making deliveries for LaserShip.  The uniform consisted of black shoes, black pants, a LaserShip shirt, and a LaserShip ID.  Drivers also had LaserShip hats and sweatshirts.

34. If Mr. Diawara showed up at LaserShip missing a part of the LaserShip uniform, he would be sent home.  He was not permitted to work without wearing the full company uniform.

35. Mr. Diawara was required to have the LaserShip logo on his van.

36. In addition, LaserShip dictated the terms of Mr. Diawara's compensation.

37. Mr. Diawara had no ability to increase his profits in the performance of his job duties for Defendant, but was instead paid a flat rate of $3.50 per delivery stop he made.  This amount was not negotiable.

38. Plaintiff's work for LaserShip did not require special training or skills.

39. In making deliveries for LaserShip, Plaintiff performed work which was a core function of the LaserShip company.

40. Plaintiff did not advertise or attempt to procure customers for LaserShip.

*FLSA and New York Labor Law violations*

41. Ten months of the year, Plaintiff worked six day per week for LaserShip.  He usually worked approximately fourteen hours per day, but at times worked even more hours.  During November and December, LaserShip's busy season, Plaintiff worked seven days per week, for the similarly long hours.

42. During all of the time that he worked for Defendant, Mr. Diawara was never paid overtime at a rate of time and one half of his regular hourly rate.

43. The truck Mr. Diawara drove while working for LaserShip weighed less than 10,000 lbs.  As a result, the "Motor Carrier" exemption does not apply here, and Mr. Diawara is entitled to receive overtime under the FLSA and state law.

44.     Despite regularly working more than 40 hours in a work week, Plaintiff was never paid overtime at a rate of time and one-half of his regular hourly rate during those work weeks.

45.     Plaintiff was a "manual worker" within the meaning of New York Labor Law § 191(a).  However,  he  was not paid the full wages owed to him within seven calendar days after the end of the week in which his wages were earned, in violation of New York Labor Law § 191(a)

46.     Throughout the time that he worked for LaserShip, Mr. Diawara did not receive wage statements which correctly reflected the hours that he worked, in violation of New York Labor Law § 195(3).

47.     At the time he began working for Defendant, Mr. Diawara did not receive a written disclosure of all the information required by New York Labor Law 195(1).

48.     Plaintiff was required by LaserShip to purchase certain equipment necessary for him to perform his job.

49.     LaserShip required Mr. Diawara to purchase and maintain the vans that he used in connection with his work, and pay the gas, tolls, insurance, and maintenance/repairs expenses associated with his work.

50.     With respect to insurance, LaserShip required Mr.Diawara to purchase coverage at the minimum level which was set by LaserShip.

51.     When he first began working for LaserShip, Mr. Diawara was required to use a LaserShip scanner in connection with his work.   For use of this scanner, he was required to pay $28 per week to LaserShip

52.   Beginning in January 2017, Mr. Diawara was required to use a LaserShip "app" which LaserShip required that he download and install on his own mobile telephone. For use of the app, Mr. Diawara was required to pay $17 per week. Through the use of the scanner and the LaserShip app, LaserShip monitored Defendant's work.

53.   Plaintiff was never reimbursed for the expenses described in the above paragraphs, which expenses were for the benefit of the Defendant.

54.   By requiring Plaintiff to incur the expenses listed above, Defendant made illegal deductions from Plaintiff's wages, in violation of New York Labor Law § 193. Defendant also violated state and federal law when these expenses reduced Plaintiff's wages below the minimum wage, or when they effectively reduced the overtime wages owed.

*Arbitration clause*

55.   While the purported "Independent Contractor Agreement" signed by Plaintiff and Lasership provides that disputes related to the Agreement will be arbitrated, arbitration is pursuant to the "Comprehensive Dispute Resolution Rules and Procedures of National Arbitration and Mediation ("NAM")," and not the employment rules of NAM.

56.   The expense for arbitrating Plaintiff's wage and hour claim under the "Comprehensive Dispute Resolution Rules and Procedures" would require Plaintiff to pay an initial administrative fee and a final administrative fee, and also pay for hourly arbitrator hearing time.

57.     All told, Plaintiff would be required to pay thousands of dollars to proceed with his wage and hour claim in arbitration.

58.     In the "Independent Contractor Agreement" Defendant has only agreed to reimburse the administrative filing fee to initiate arbitration.

59.     The expense of arbitration, which is significantly more than the cost of commencing an action in federal court, would be prohibitively expensive for Plaintiff based upon his individual financial circumstances.

60.     For this reason, Plaintiff has commenced this action in Court rather than arbitration.

*Other*

61.     Defendant failed to post at Plaintiff's workplace posters setting forth employees' rights under federal and state wage and hour law.

62.     The actions and omissions alleged above were willful.

Causes of Action

I.      Fair Labor Standards Act

63.     The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

64.     Defendant willfully failed to pay Plaintiff an overtime premium of one half of his regularly hourly rate for every hour he worked above 40 in a work week.  This failure violates the Fair Labor Standards Act, 29 U.S.C. § 207(a), and its implementing regulations.

65.     By requiring Plaintiff to incur work expenses of the type described herein, Defendant reduced Plaintiff's pay below the minimum wage and cut into and

thereby reduced the overtime wages owed to him, in violation of 29 U.S.C. §
206(a) and 207(a), and 29 C.F.R. § 531.35.

66.    Defendant also violated the FLSA by failing to keep records as required by
statute, 29 U.S.C. § 211(c).

67.    The Plaintiff is entitled to his unpaid wages, plus an additional equal amount in
liquidated damages, as a consequence of Defendant' unlawful actions and
omissions, in accordance with 29 U.S.C. § 216(b).

68.    The Plaintiff also seeks, and is entitled to, costs and attorneys' fees incurred by
his counsel, pursuant to 29 U.S.C. § 216(b).

II:    <u>New York Labor Law (Minimum Wage and Overtime)</u>

69.    The Plaintiff realleges and incorporates by reference the foregoing allegations as
if set forth fully here.

70.    Defendant failed to pay Plaintiff an overtime premium of one-half times his
regularly hourly rate for every hour he worked above 40 in a work week, in
violation of New York Labor Law § 190, *et seq.,* and its attendant regulations.

71.    By requiring Plaintiff to incur work expenses of the type described herein,
Defendant reduced Plaintiff's pay below the minimum wage in the carrying out of
his duties assigned by his employer, in violation of New York Labor Law § 652
and its implementing regulations, 12 N.Y.C.R.R. §142-2.10, *et seq.*

72.    Defendant's failure to pay the required wages as set forth above was willful
within the meaning of New York Labor Law §§ 198, 663, and 681.

73.    Plaintiff is entitled to his unpaid wages mandated by New York Labor Law, plus
an additional 100 percent as liquidated damages, as a consequence of the

Defendant's unlawful actions and omissions, in accordance with New York Labor Law §§ 198, 663, and 681.

74. Plaintiff also seeks, and is entitled to, attorneys' fees incurred by his counsel, costs, and interest.

III. <u>New York Labor Law (Failure to Pay Wages)</u>

75. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

76. Defendant failed to pay Plaintiff, who was a manual worker, the full wages owed to him on a weekly basis in violation of New York Labor Law § 191.

77. Plaintiff is entitled to his unpaid wages mandated by New York Labor Law, plus an additional 100 percent as liquidated damages, as a consequence of the Defendant's unlawful actions and omissions, in accordance with New York Labor Law §§ 198, 663, and 681.

78. Plaintiff also seeks, and is entitled to, attorneys' fees incurred by his counsel, costs, and interest.

IV. <u>New York Labor Law (Illegal Deductions)</u>

79. The Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully here.

80. Plaintiff was required to incur out-of-pocket expenses as part of his employment. These expenses were for items which benefited Defendant, were not for a purpose enumerated by statute, and were not authorized in writing.

81. These expenses were illegal deductions from the wages of Plaintiff, in violation of New York Labor Law § 193 and 12 N.Y.C.R.R. 142-2-10.

82.     Plaintiff is entitled repayments of these illegal deductions, plus an additional 100

        percent as liquidated damages, as a consequence of the Defendant's unlawful

        actions and omissions, in accordance with New York Labor Law §§ 198, 663, and

        681.

83.     Plaintiff also seeks, and is entitled to, attorneys' fees incurred by his counsel,

        costs, and interest.

V.      <u>New York Labor Law (Pay Statements and Disclosure of Required Information)</u>

84.     The Plaintiff realleges and incorporates by reference the foregoing allegations as

        if set forth fully here.

85.     Defendant failed to provide Plaintiff, at the time of his hiring, notices containing

        his rate of pay and other information as required by New York Labor Law §

        195(1).

86.     Defendant also failed to provide the Plaintiff with accurate statements with every

        payment of wages which provided all of the information required under New

        York Labor Law § 195(3).

87.     For Defendant's violation of New York Labor Law § 195(1), Plaintiff is entitled

        to $50 for each work day in which this violation continued to occur, in an amount

        not to exceed $5,000, pursuant to New York Labor Law §198(1-b).

88.     For Defendant's violation of New York Labor Law § 195(13), Plaintiff is entitled

        to $250 for each work day in which this violation continued to occur, in an

        amount not to exceed $5,000, pursuant to New York Labor Law §198(1-d).

89.     Plaintiff also seeks, and is entitled to, attorneys' fees incurred by his counsel,

        costs, and interest.

<u>Demand for Jury Trial</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

WHEREFORE, Plaintiff requests that the Court enter an Order:

      a.      assuming jurisdiction over this action;

      b.      declaring that Defendants violated the FLSA and New York Labor Law;

      c.      permanently enjoining Defendants from further violations of the FLSA and New York Labor Law;

      d.      granting judgment to Plaintiff on his FLSA claim and him his unpaid overtime and other wages and an equal amount in liquidated damages;

      e.      granting judgment to Plaintiff on his New York Labor Law claims and awarding him his unpaid overtime and other wages as well as liquidated damages provided for by statute;

      f.      awarding Plaintiff prejudgment and postjudgment interest as allowed by law;

      g.      awarding the Plaintiff his costs and reasonable attorneys' fees; and

      h.      granting such further relief as the Court finds just.

DATED:      New York, NY
              July 13, 2017

                      KAKALEC & SCHLANGER, LLP

                      <u>/s/ Patricia Kakalec</u>
                      Patricia Kakalec
                      pkakalec@kakalec-schlanger.com

85 Broad Street, 16th Floor
New York, NY 10004
(212) 500-6114

*Attorneys for Plaintiff*

# EXHIBIT 1

## CONSENT TO SUE UNDER THE FAIR LABOR STANDARDS ACT

I hereby consent to be a party Plaintiff in an action against Lasership, Inc. and/or related entities and/or individuals to recover unpaid overtime and other wages, liquidated damages, attorneys' fees, costs, and other relief arising out of my employment with Lasership, Inc. and/or associated parties.

Sidy Diawara
_____
Full name

_____
Signature

_06/26/2017_____
Date